No. 16-0136 - *Patrick D. Leggett, et al. v. EQT*

*Production Company*

FILED

**May 30, 2017**

**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Davis, Justice, dissenting:

In this proceeding, the Court was asked to decide whether W. Va. Code § 22-6-8(e) authorized the Respondents to deduct from the royalty payments of the Petitioners part of the post-production costs associated with drilling oil and gas. When this issue was first presented, a majority of this Court determined that the statute did not authorize such deductions from the royalty payments. I voted with the majority in that decision. After the majority opinion was filed, Respondents filed a motion for rehearing. I voted against a rehearing, but a majority of the Court voted to rehear the case.[1] After the rehearing, a new majority opinion was issued which concluded that, under W. Va. Code § 22-6-8(e), the Respondents could, in fact, deduct post-production costs associated with drilling oil and gas. For the reasons set out below, I dissent from this new majority opinion.

### A. Two Preliminary Issues

As a preliminary matter, there are two issues I wish to quickly dispose of before

---

[1]One member of the Court who was on the original majority opinion, Justice Benjamin, was no longer with the Court when the rehearing was decided.

addressing the merits of my dissent. First, contrary to the unsubstantiated assertion of the

majority opinion, there is and was no legal basis for granting a rehearing in this case.

> Rule 25 of the West Virginia Rules of Appellate Procedure states that a petition for rehearing "shall state with particularity the points of law or fact which in the opinion of the petitioner *the Court* has overlooked or misapprehended[.]" (emphasis added). This Court has recognized that "well settled principles of appellate procedure indicate that 'a rehearing on an appeal can be granted only for purposes of correcting errors that the court has made . . . .'" *Perrine v. E.I. du Pont de Nemours and Co.*, 225 W. Va. 482, 598, 694 S.E.2d 815, 931 (2010) (quoting *In re Leslie H.*, 369 Ill. App. 3d 854, 308 Ill. Dec. 445, 861 N.E.2d 1010, 1015 (2006)).

*West Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 519, 766 S.E.2d

751, 778 (2014). Moreover, "[r]epetition of argument previously presented to the Court in

the case in not a proper basis for a petition for rehearing." W. Va. R. App. Proc. 25(b).


I have combed through the majority opinion several times and have failed to find any

legal or factual error in the original majority opinion that this new majority opinion relied

upon to justify granting the rehearing. All that the new majority opinion has done is to

provide self-serving reasons as to why it would resolve the issue presented differently. In

the final analysis, all that the new majority opinion has done is to conclude that the operative

language in the dispositive statute was not ambiguous whereas the original majority opinion

reached the opposite view of the statute. This difference of opinion is not a basis for

rehearing. Ultimately, this is simply an impermissible request by the Respondents asking the

Court to change its mind.

2

Second, the new majority opinion went to great lengths to misconstrue the manner in which the original majority opinion discussed the decisions in *Wellman v. Energy Resources, Inc.*, 210 W. Va. 200, 557 S.E.2d 254 (2001), and *Tawney v. Columbia Natural Resources, L.L.C.,* 219 W. Va. 266, 633 S.E.2d 22 (2006). Contrary to the assertions of the new majority opinion, the original majority opinion had to discuss those cases because they were part of the certified question. After discussing those decisions, the original majority opinion held the following:

> All the preceding inevitably leads us back to the first certified question, which asks simply whether our 2006 decision in *Tawney* has "any effect" on the proper construction of the statutory term "at the wellhead," enacted in 1982 as part of West Virginia Code § 22-6-8, in connection with the minimum royalty payments due owners of oil and gas in place subject to flat-rate leases. Through our discussion, we have demonstrated that *Tawney* and our earlier precedents, particularly *Wellman*, indeed inform the analysis of the issue, but the question as formulated, we believe, imprecisely addresses the particular dispute between the parties.
>
> We therefore reformulate the question, in accordance with the discretion afforded us by West Virginia Code § 51-1A-4, as follows:
>
> Whenever the lessee-owner of a working interest in an oil or gas well must comply with West Virginia Code § 22-6-8(e) by tendering to the lessor-owner of the oil or gas in place a royalty not less than one-eighth of the total amount paid to or received by or allowed to the lessee, does the statute require in addition that the lessee not deduct from that amount any expenses that have been incurred in gathering, transporting, or treating the oil or gas after it has been initially extracted, any sums attributable to a loss or beneficial use of volume beyond that initially measured, or any other costs that may be

3

characterized as post-production?

We answer that question in the affirmative.

*Leggett v. EQT Prod. Co.*, No. 16-0136, 2016 WL 6835732, at \*8 (W. Va. Nov. 17, 2016).

The new majority opinion wrongly stated that the original majority opinion used contract

principles applicable in *Wellman* and *Tawney* in order to decide the intent behind the

statutory meaning of "at the wellhead." However, as noted above, the original majority

opinion reformulated the certified question so as to take out the *Wellman* and *Tawney*

analysis as a basis for answering the question. The reformulated question clearly was

grounded on the meaning of the statute. This point is made clear in the original majority

opinion when it held the following:

> The absence of clear, unambiguous language [in the statute]
> gives rise to the uncertainty that there may be more than one
> way by which the holder of a working interest in an oil or gas
> well can comply with West Virginia Code § 22-6-8(e)'s
> command that the landowner's royalty be calculated "at the
> wellhead." It thus becomes necessary that we resort to
> traditional rules of statutory construction to accurately discern
> the intent of the Legislature. *See* syl. pt. 1, *Farley v. Buckalew*,
> 186 W. Va. 693, 414 S.E.2d 454 (1992) ("A statute that is
> ambiguous must be construed before it can be applied."); *State
> v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*,
> 144 W. Va. 137, 144, 107 S.E.2d 353, 358 (1959) ("[I]n the
> interpretation of a statute, the legislative intention is the
> controlling factor; and the intention of the legislature is
> ascertained from the provisions of the statute by the application
> of sound and well established canons of construction.").

*Leggett*, 2016 WL 6835732, at \*6. To be clear, in order to justify its erroneous decision in

this case, the new majority opinion wrongly asserted that the original majority opinion used

4

contract principles to analyze the statute. I have shown that the original majority opinion expressly stated that it was relying upon statutory principles to examine the statute, *not* the law governing contracts.

### B. The Operative Language in W. Va. Code § 22-6-8(e) Is Ambiguous

The new majority opinion found that the applicable language in W. Va. Code § 22-6-8(e) is not ambiguous. It further erroneously concludes that the statute clearly authorizes the Respondents to deduct post-production costs from the Petitioners' royalty payments. The majority opinion is simply wrong. The relevant language of the statute provides as follows:

> the owner of the working interest in the well . . . shall tender to the owner of the oil or gas in place not less than one eighth of the total amount paid to or received by or allowed to the owner of the working interest *at the wellhead* for the oil or gas so extracted, produced or marketed before deducting the amount to be paid to or set aside for the owner of the oil or gas in place, on all such oil or gas to be extracted, produced or marketed from the well.

W. Va. Code § 22-6-8(e) (emphasis added). According to the new majority opinion, there is no ambiguity in the language of this provision. The new majority opinion determined that this provision clearly shows that "[r]oyalty payments pursuant to an oil and gas lease governed by the [statute] may be subject to pro-rata deduction or allocation of all reasonable post-production expenses actually incurred by the lessee." I cannot understand how this reasoning by the new majority opinion is supported by the statute. The statute does not

5

contain any provisions that address the issue of "pro-rata deduction or allocation of all reasonable post-production expenses."

I will not belabor this point. It is clear to anyone reading the statute that you cannot discern a legislative intent to allow a deduction for post-production expenses. The new majority opinion has used legal sophistry to fool only itself.

The original majority opinion correctly found that the provision was ambiguous. In doing so, the original majority opinion applied basic statutory construction principles to discern the legislative intent of the statute. The original majority opinion looked to the whole of the statute to see if it could determine a legislative intent to force oil and gas owners to pay for post-production costs. The original majority opinion held that "[w]e need not guess at the Legislature's purpose in enacting § 22-6-8, for the wrongs intended to be redressed are starkly revealed in the legislative findings and declarations indelibly engraved into the statute itself." The original majority opinion then cited to the following provision of the statute to reach the conclusion that the Legislature *did not intend* to have oil and gas owners pay for post-production costs:

> The Legislature hereby finds and declares:
>
> . . . .
>
> That continued exploitation of the natural resources of
> this state in exchange for such wholly inadequate compensation

6

is unfair, oppressive, works an unjust hardship on the owners of the oil and gas in place, and unreasonably deprives the economy of the state of West Virginia of the just benefit of the natural wealth of this state.

W. Va. Code § 22-6-8(a)(2). After reviewing this provision of the statute, as well as others, the original majority opinion reached the rational conclusion that "[i]t would have been perversely inconsistent with the overarching remedial intent of the flat-rate statute for a Legislature so passionately dedicated to ensuring the future flow of adequate compensation to oil and gas landowners to have purposefully provided a mechanism of royalty valuation specifically designed to curtail that compensation." *Leggett*, 2016 WL 6835732, at *6. In other words, the legislative purpose of the statute unequivocally revealed an intent to provide oil and gas owners with the maximum possible royalty payments. The statute was not intended as a mechanism to reduce royalty payments or to fill the coffers of companies who develop oil and gas interests. This is the intent only of the new majority opinion.

In order for the new majority opinion to have reached its unsupported conclusion, it had to create the illusion that the statute was not ambiguous. This point is key because if the new majority opinion had followed basic rules of statutory construction, it would have been compelled to reach the same conclusion that the original majority opinion reached.

In my final thoughts on this matter, I must return to *Wellman* and *Tawney*. As I previously noted, those two decisions were jettisoned by the new majority opinion because

7

they presented an impediment to the conclusion that the new majority strained to reach. Those two opinions have been the law with respect to oil and gas contracts for over ten years. Specifically, for over ten years those two opinions have stood for the proposition that oil and gas leases that contain language requiring payment of royalty "at the wellhead," without more, do not permit the reduction of royalty payments for post-production costs. In spite of the existence of this proposition in *Wellman* and *Tawney* for more than ten years, the Legislature has never amended W. Va. Code § 22-6-8(e) so as to remove the "at the wellhead" language from the statute for the purpose of distinguishing the reasoning of *Wellman* and *Tawney*. In 2017, Delegate Walters introduced the following amendment to W. Va. Code § 22-6-8(e) for the purpose of removing "at the wellhead" from the provision:

> (e) To avoid the permit prohibition of subsection (d), the applicant may file with such application an affidavit which certifies that the affiant is authorized by the owner of the working interest in the well to state that it shall tender to the owner of the oil or gas in place not less than one eighth of the total amount paid to or received by or allowed to the owner of the working interest ~~at the wellhead~~ for the oil or gas so extracted, produced or marketed before deducting the amount to be paid to or set aside for the owner of the oil or gas in place, on all such oil or gas to be extracted, produced or marketed from the well. If such affidavit be filed with such application, then such application for permit shall be treated as if such lease or leases or other continuing contract or contracts comply with the provisions of this section.

(Strikethrough in original). This amendment died in committee. Clearly, this amendment was intended to remove the implications of *Wellman* and *Tawney* from an analysis of the statute. The Legislature chose not to remove that implication because the implication was

correct. However, the new majority opinion has done what the Legislature refused to do. The new majority opinion has rewritten the statute to say what it was never intended to say.

In view of the foregoing, I dissent.